

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0852-10

### JOSE LUIS PENA, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE TENTH COURT OF APPEALS
### LEON COUNTY

**HERVEY, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

Appellant was indicted for possession of more than five but less than fifty pounds

of marijuana. A jury found him guilty and sentenced him to life imprisonment as a

habitual offender. The Waco Court of Appeals affirmed, rejecting Appellant's argument

that *Brady*[1] applied when the State failed to disclose to Appellant the audio portion of a

videotape containing exculpatory statements that he made to police. *Pena v. State*, No.

---

[1]*Brady v. Maryland*, 373 U.S. 83 (1963).

10-03-00109-CR, 2010 Tex. App. LEXIS 4389 (Tex. App.—Waco June 9, 2010) (op. on remand, not designated for publication). We granted Appellant's petition for discretionary review to determine if *Brady* is applicable to these facts. We will hold that it is, and we will reverse the judgment of the court of appeals.

## I. FACTS

On September 27, 1998, Texas Department of Public Safety (DPS) Trooper Mike Asby pulled over a van driven by Appellant for a traffic violation.[2] When Appellant exited the vehicle upon Asby's request, the trooper noticed that Appellant smelled of what he believed to be marijuana. Then, when he approached the van, Asby saw what he thought was freshly cut marijuana covering the cargo area of the vehicle. Appellant was subsequently arrested and transported to jail. These events were captured by a car-mounted camera that videotaped the stop, detention, and transport to jail. The plant material was seized and removed from the van. It was then sent to the DPS laboratory in Waco for testing.

Appellant was indicted for possession of a usable quantity of marijuana in an amount of more than five pounds but fifty pounds or less, enhanced by three prior felony convictions.[3] Pursuant to a *Brady* motion by the defense, the State, prior to trial, provided Appellant with what purported to be a copy of the videotape from Asby's car-mounted

[2]Appellant was driving a rental van with Minnesota plates.

[3]The indictment alleged that Appellant did "intentionally and knowingly possess a usable quantity of Marijuana of more than five (5) pounds but less than fifty (50) pounds."

camera. Defense counsel was concerned that the tape had no audio, so he consulted with the State and was advised that there was no sound on the recording. Then, in March 2002, Appellant filed a motion requesting to independently examine and test the evidence. Unfortunately, this request proved to be impossible because the plant material was destroyed in March 2000.

At trial, Asby was the first witness to testify. The State admitted the dash-camera's videotape before the jury as State's Exhibit 1 and played it during Asby's testimony. The jury was told that it contained no audio but was otherwise accurate. Asby explained that the lack of sound had resulted from either a battery malfunction or his failure to activate the recording device that he carried. Asby stated that he was trained to utilize such videotapes in court since they replicate "what happened out there that day."

Asby testified that, based on his many years of experience, he believed that the plant material in Appellant's van was freshly cut marijuana. Although he had never made another case from the seizure of fresh, green marijuana, Asby had observed the sheriff's department harvest marijuana and had seen growing fields of marijuana on ten or twelve occasions. He asserted that he had never "pulled anybody over that had something that smelled like marijuana that wasn't marijuana." Still, Asby acknowledged that Appellant vehemently denied that the material was marijuana:

> Q. [STATE]: Okay. Have you ever discovered something that looked like marijuana that wasn't marijuana?
>
> A. [ASBY]: I haven't. I have heard there are cases where people sell false

narcotics. There was a sheet rock case in Dallas that made a lot of cocaine history, but I haven't personally ever. That's the reason we send it to the lab to have it analyzed to be sure it's what we think it is.

Q. All right. At this point what is the defendant telling you?

A. He told me that it wasn't marijuana.

Q. What did he tell you it was?

A. I don't remember. He said he was going to make some stuff out of it. I can't remember if he told me it was hemp or not, but he told me it wasn't marijuana.

Q. And based on all your experience was it marijuana?

A. Yes, sir.

Asby stated that Appellant tried to convince the officers of the legal nature of the plant material. Appellant told him that he had cut the plants on the side of the highway somewhere in Kansas and that he was going to make "leather goods," "trinkets," and "stuff" out of it. Asby testified, and the videotape confirms, that he spent considerable time discussing the plant material with other officers at the scene. Asby admitted that he may have even tried to call a chemist to verify Appellant's story and to ask if the chemist had "ever heard of something like marijuana, just hemp that is legal to have." Asby's confusion was clear during this line of questioning:

Q. [DEFENSE]: When the other officers come ya'll all go up and stand around the van, right?

A. [ASBY]: Correct.

Q. And ya'll just kind of looking in there? Is that what you're doing? I

notice they didn't really climb in the van or do anything. Ya'll are just standing by the door? What are ya'll doing?

A. As I said before, this was an unusual case because normally drug trafficking goes north, not south. And we were pretty amazed that this load of marijuana was coming south. And I again questioned them, I said well, he says it's not marijuana. I said -- and I knew that there was a substance called hemp and I was asking them. At some time I may even tried [sic] to call a chemist and say is there any validity to this story. And I asked them you ever heard of something like marijuana, just hemp that is legal to have.

Q. And so ya'll were talking about this, trying to make a decision whether it really was marijuana or not, right?

A. I knew it was marijuana. I didn't know if there was any kind of legal -- any kind of legal marijuana you could have according to what Mr. Pena said.

Q. So let me try to clarify a little bit there with you. Then there is legal marijuana and not legal marijuana or there is hemp that is legal and illegal marijuana which is cannabis sativa?

A. I don't know. That's what we were talking about.

Q. Okay. So you really were just -- you just didn't know what it was then really did you?

A. I knew it was marijuana. In my experience it smelled like marijuana, it looked like marijuana, it felt like marijuana.

Although Asby remembered Appellant's assertions that the plant material was not marijuana, he could not recall if Appellant had requested testing of the plant material.

Q. [DEFENSE]: And, in fact, he also requested that it be tested didn't he?

A.[ASBY]: Is that in my report? I don't remember that. I knew I was going to have it tested.

Q: And he told you he wanted it tested, too, didn't he? . . . He informed you

that he wanted not only to have ya'll test it but that he wanted to test it, too, didn't he?

A: That could be correct. I don't remember.

DPS chemist Charles Mott testified next. He stated that he analyzed the plant material submitted by Asby and determined that it was marijuana weighing 23.46 pounds. Mott's lab report, showing the results of his testing, was introduced into evidence as State's Exhibit 14. Mott explained that this conclusion was based on a microscopic visual inspection and the presence of the chemical THC in the plant. He also testified that hemp rope would not necessarily, but could possibly, test positive for THC "but that you would have a rope and you wouldn't be looking at it for marijuana . . . ."

Q. [DEFENSE]: When you test this you only test to see if there is any THC, not any percentile or quantity or anything else, right?

A. [MOTT]: That's right. We do not quantitate the THC in the marijuana.

Q. So if you tested hemp rope it would still test and be positive for THC wouldn't it?

A. Not necessarily, sir. Because hemp rope, whenever the marijuana plant matures you have the central stalk going up. And from this central stalk is where the hemp rope -- where you get the hemp rope. And by the time you make the rope, you take that fibrous material to make the rope, well, any of the THC is probably gone in the washing and so forth.

Q. So it would have to be washed out, physically removed, right?

A. I would think so, sir. If -- in the stalk it is probably not a whole lot present. It's mainly in the leaves and the flowering top.

Q. But there is some in there isn't there?

A. Yes, sir, it is.

Q. And so if it wasn't washed, well, it could be possible it would test positive wouldn't it?

A. On the stalk it's a possibility, yes, sir.

Q. And what I'm talking about, if the rope material, the fibers weren't washed well enough?

A. You mean the reason? I doubt if you would find it in the rope. But if you had some stalk you could probably find THC in stalk [sic].

Q. And so if the manufacturing process, if it wasn't washed well and removed from it then it's possible it would show up wouldn't it?

A. It's possible. But you would have a rope and you wouldn't be looking at it for marijuana, sir.

Mott testified that the plant material was destroyed in March 2000, about a year after its analysis and before "the defense was interested in testing this and having an independent lab test." Mott stated that the computer records reflected that a destruction order was received, but he conceded that he did not know who sent the alleged order for destruction. No one could say who authorized its destruction.[4] Not only was the evidence destroyed, but the file containing the original worksheet, reports, letters, and submission forms was also destroyed or lost. It was discovered that the evidence was destroyed only after a motion was filed to examine and test.

The parties rested after a State's expert testified about the street value and quantity

---

[4]Testimony showed that no destruction order was signed by the court, the prosecutor was not aware of this action, and Asby did not recall submitting such a request.

of the amount of marijuana involved here.

During closing jury arguments, the State claimed that the defensive theory that the plant material was not marijuana was a "smoke screen," and it attacked the credibility of Appellant's assertions related to his defense: "What I just heard is what we used to call trickery when I was on the used car lot." The State further argued that the defense did not even request testing of the plant material until after it knew that the plant material had been destroyed: "You know what the defense is going to be. We want to test the marijuana. We want to test the marijuana. That wasn't until 2002."

It was discovered, following closing arguments and after the jury was sent to begin deliberations, that a portion of the videotape (State's Exhibit 1) had audio.[5] The defense pointed this out to the trial court:

> [DEFENSE]: Also, in reference to the exhibits, Whitney and I noticed -- Whitney Smith, prosecutor, and I noticed when we were finishing up that tape and quickly cut it off that all of a sudden some sound came on when they were driving down the road and in the vehicle. The tape that I had, that Mr. Smith made for me, did not have any understandable words that we began to hear there. Whitney and I talked about this and we just want to take a few minutes right now and look and listen to the very end of that tape. I don't know that it had been rewound.
>
> THE COURT: Help yourself.
>
> [DEFENSE]: In case we have to delete that portion out of it if they ask for it.

---

[5]The record indicates that the videotape was played for the jury up to the point where Asby begins to drive away from the scene. It is shortly after that moment that the audio portion begins.

[STATE]: There is no objection from the State to delete that part because I only gave him stuff that didn't have sound to it.

[DEFENSE]: We don't know what it says.

THE COURT: Let him listen to it.[6]

The jury never heard the audio portion of the videotape. At least one juror was initially persuaded that Appellant's claims were reasonable; a note sent back by the jury foreperson questioned what happened if the jury could not agree and indicated the current vote was 11-1. Later, the jury found Appellant guilty of felony possession of marijuana, affirmed the enhancement paragraphs, and sentenced him to life imprisonment.

Appellant, through counsel, filed a motion for new trial, which included eight separate grounds for a new trial. Among other issues, the motion contended that trial counsel rendered ineffective assistance, and one of the related allegations was that "counsel was ineffective for failing to present to the jury the exculpatory audio portions of the videotape." At the hearing on the motion, the primary focus was on the audio portion of the videotape. In his opening statement, motion counsel raised the possibility that the State withheld that evidence. Trial counsel testified that he was advised by the prosecutor that the videotape recorded by the arresting officer had no audio, and motion counsel explained, "We assume there will be a record and if the record does reveal that there was material on the tape that wasn't played to the jury and the evidence was

---

[6]The record does not show whether anything further occurred with the audio portion at trial.

exculpatory, then there are several possible issues that could be raised on appeal."

Appellant testified at the hearing that he knew the audio portion of the videotape was not played for the jury. He further stated that, after the jury was sent to deliberate, he was in the courtroom when defense counsel pushed "play" on the video player, and they heard audio on the tape. Appellant explained that the audio portion of the tape was where "I'm telling [the trooper] that it's not marijuana and that is it going to be tested and he assured me that it would be, on the audio."

The prosecutor took the stand last. He asserted that he did not hold anything back from the defense, and he remembered hearing the audio after closing arguments. The trial court subsequently denied the motion for new trial.

## II. WACO COURT OF APPEALS

On appeal,[7] Appellant claimed that the videotape provided to him by the State had no audio and that the State's failure to disclose the audio portion of the videotape violated

---

[7]The Waco Court of Appeals initially *sua sponte* reversed Appellant's conviction, finding that the Texas due course of law provision was violated by the State's destruction and loss of both the evidence seized and all files related to this evidence, which denied Appellant the opportunity to test this material as he had requested. *Pena v. State*, 166 S.W.3d 275 (Tex. App.—Waco 2005). It did not reach Appellant's remaining points of error. We granted discretionary review and reversed the court of appeals because the due course of law issue had not been raised by the parties. We remanded to allow parties to brief this issue. *Pena v. State*, 191 S.W.3d 133 (Tex. Crim. App. 2006). After additional briefing on the requested issues, the Waco court issued a second opinion affirming that error was preserved at the trial level and that Texas due course of law offered greater protection than federal due process. *Pena v. State*, 226 S.W.3d 634 (Tex. App.—Waco 2007). We granted review and again reversed because the separate Texas constitutional due course of law claim was not preserved. *Pena v. State*, 285 S.W.3d 459 (Tex. Crim. App. 2009). We remanded the case for consideration of Appellant's remaining points of error.

*Brady. Pena*, 2010 Tex. App. LEXIS 4389. The Waco Court of Appeals rejected this argument. It decided that Appellant knew of the existence and content of his statement in the videotape since he was there when it was made. *Id.* at *2-3. "*Brady* does not apply to the State's failure to disclose a statement the defendant made to law enforcement officials" under these circumstances. *Id.* at *3.

We granted Appellant's petition for discretionary review challenging the court of appeals's holding. Specifically, Appellant's ground for review stated the following:

> Whether the court of appeals erred in concluding that the due process protections afforded under *Brady v. Maryland*, 373 U.S. 83 (1963), did not apply when the State failed to disclose or provide to Appellant, after specific request, the audio portion, containing exculpatory statements made by Appellant to police, of a videotape used by the State before the jury.

### III. ARGUMENTS OF THE PARTIES

*A. Appellant's Arguments*

Appellant contends that the State's suppression of the audio portion of the tape, despite his specific request for it, and the State's denial that it existed violated his due process right to a fair trial as mandated by *Brady*.

Appellant argues that the court of appeals incorrectly determined that *Brady* did not apply when it misapplied *Havard v. State*, 800 S.W.2d 195 (Tex. Crim. App. 1996). The court failed to consider the factual context of this case, which is clearly distinguishable. Here, the statements were recorded and preserved by law enforcement officers, who then maintained exclusive possession and control over the evidence, and

years later, there are no other means available to produce that exact evidence. Also, Appellant was not aware that his arrest statements had been recorded and preserved, and he was erroneously advised by the State that his statements were not in existence, as was the jury.

In addition, Appellant maintains that the State used the tape to its advantage and denied that a portion of it existed in order to mislead Appellant and the jury. Appellant notes that Asby's lack of memory and the State's failure to disclose allowed the prosecutor to argue that Appellant was engaged in a smoke screen or trickery and that he did not request testing until after he knew that the evidence had been destroyed.

Appellant asserts that his claim satisfies the requirements of *Brady*. First, the State failed to disclose the audio portion of the videotape. Second, the audio was favorable because it supported his lack of culpability. Third, Appellant argues that the audio evidence was material because the evidence that he requested for testing from the beginning might have allowed a different approach by the defense. They could have explored impeachment and better focused on mistake of fact, even if the substance was marijuana. Finally, Appellant contends that the audio would have been admissible under Rule of Evidence 107, which allows for the introduction of other recorded statements on the same subject to explain acts previously admitted.

## B. State's Arguments

The State responds that Appellant failed to preserve the *Brady* complaint for

review because he failed to make any objection or request to the trial court regarding the audio recording. The State notes that Appellant was aware of the audio portion before the jury returned a verdict, but he made no *Brady* claim at that time. Nor did he request to re-open the evidence, move for a mistrial, or request that the trial court refer the tape to the jury. Further, *Brady* was not mentioned in the motion for new trial.

The State argues that, even if Appellant did preserve the issue for appeal, *Brady* is inapplicable because the audio recording was of Appellant's own comments to police. *Havard*, 800 S.W.2d at 204-05. The State asserts that *Brady* is not implicated when the item at issue is the defendant's own statement. And, in any event, Asby testified regarding those statements, meaning that Appellant was placed on notice.

Finally, the State contends that *Brady* does not apply because the audio portion of the videotape would not have been admissible evidence. The State argues that Appellant's statements were exculpatory, self-serving hearsay, which would have been inadmissible at trial. If Appellant wanted to place his statements before the jury more forcefully, Appellant could have testified to them himself.

### C. Appellant's Reply

Appellant responds that his *Brady* claim was preserved for appellate review. Appellant notes that he did not become aware of the audio portion until after the jury had retired to deliberate. At that juncture, Article 36.02 of the Texas Code of Criminal Procedure precluded the admission or introduction of the evidence, and the defense had

not had the opportunity to analyze this portion of the tape to formulate either a *Brady* objection or a motion for mistrial. In addition, Appellant contends that, although the written motion for new trial did not address *Brady* specifically, the hearing on the motion did address the failure of the State to provide this material evidence, so the court was advised of the *Brady* violation claim.

## IV. PRESERVATION OF ERROR

Preservation of error is governed by Rule 33.1 of the Texas Rules of Appellate Procedure, which provides that, to preserve error, a complaint must be "made to the trial court by a timely request, objection, or motion that . . . state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). The record must also show that the trial court "ruled on the request, objection, or motion, either expressly or *implicitly*" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal." Tex. R. App. P. 33.1(a)(2) (emphasis added).

A complaint is timely if it is made "as soon as the ground of objection becomes apparent." *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991). Regarding its specificity, the objection must simply be clear enough to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error. *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009). No "magic words" are

required.[8]  *Id*.  An objection is considered in the context in which the complaint was made

and the parties' shared understanding of the complaint at that time.  *Lankston v. State*, 827

S.W.2d 907, 911 (Tex. Crim. App. 1992).

In this case, defense counsel discovered the audio portion of the videotape after the

completion of final arguments and after the jury had retired to deliberations.  At that time,

defense counsel was not aware of the substance of the audio—"We don't know what it

says."  Thus, the grounds for an objection had yet to become apparent.  Additionally,

Appellant could not then re-open the case in order to get the audio into evidence because

doing so would have been contrary to Article 36.02 of the Texas Code of Criminal

Procedure, which states, "The court shall allow testimony to be introduced at any time

*before* the argument of a cause is concluded, if it appears that it is necessary to a due

administration of justice." (Emphasis added).  The introduction of evidence after the

conclusion of closing arguments is prohibited.  *Williams v. State*, 32 S.W. 893, 894 (Tex.

Crim. App. 1895); *cf. Peek v. State*, 106 S.W.3d 72, 74 (Tex. Crim. App. 2003).

After he was found guilty and sentenced, Appellant filed a motion for new trial,

asserting, *inter alia,* that defense counsel was ineffective for failing to attempt to place

the audio portion before the jury.  The motion did not explicitly present the State's failure

---

[8]"Straightforward communication in plain English will always suffice."  *Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992).  "The standards of procedural default . . . are not to be implemented by splitting hairs in the appellate courts.  As regards specificity, all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it."  *Id.* at 909.

to provide this evidence as a *Brady* violation, but the hearing on the motion did address the failure of the State to provide the material, exculpatory evidence. In fact, the audio portion was the primary focus of the hearing.

In his initial argument, motion counsel raised the possibility that the State withheld the evidence:

> The second thing is -- is that there was a videotape that had an exculpatory portion in it. From what we have been told, there's a videotape that has an exculpatory audio portion of it where, after his arrest, the defendant asked for the drugs to be tested and the officer told him the drugs would be tested. This video -- this audio portion of the videotape was never played to the jury . . . .

When trial counsel took the stand, he stated that he could not remember what was included in the audio recording because he had not reviewed his notes. However, if Appellant had requested that the plant material be tested, that would be consistent with the defense's position during trial, and it could be exculpatory. Trial counsel also testified that he was advised by the prosecutor that the videotape had no audio, when in fact it did. After hearing this testimony, the court objected that this issue was primarily speculation in the absence of a completed record.[9] Motion counsel responded,

> [W]e intend to offer evidence that what was on the tape that was not played to the jury was the defendant's assertion to the trooper . . . "It's not marijuana" and asking the trooper to test it and the trooper assuring him that it would be tested. We believe that's on the tape and I don't have a copy of the tape but I've heard a description of it, so that's what we believe is there. We believe that this defense counsel didn't have access to the information prior . . . .

---

[9]The court reporter had not yet completed his record of the trial.

The court interrupted this argument, but counsel then clarified his position:

> Well, because we assume there will be a record and if the record does reveal that there was material on the tape that wasn't played to the jury and the evidence was exculpatory, then there are several possible issues that could be raised on appeal. Was there --

Later, the prosecutor cross-examined trial counsel regarding the videotape, specifically its audio. Appellant testified that the audio portion was not played for the jury and that, when the videotape was played after the jury was sent to deliberate, the audio portion began where "I'm telling [the trooper] that it's not marijuana and that is it going to be tested and he assured me that it would be, on the audio." Finally, the prosecutor testified on his own behalf that the State did not hold anything back from the defense.

Overall, the record of the motion for a new trial hearing reflects that the *Brady* issue was preserved for appeal. Although the word "Brady" was not specifically used, the trial court and the State were both aware of the purported error. The State's failure to provide the audio recording dominated the motion hearing, and all parties (the court, the State, and the defense) made references to "material" and "exculpatory" evidence as well as the possible appellate implications if the facts alleged by Appellant were proven to be true. The *Brady* issue is sufficiently clear from the record, and when the trial judge denied Appellant's motion for new trial, he was implicitly ruling on the *Brady* claim. *See, e.g., Montanez v. State*, 195 S.W.3d 101, 104-05 (Tex. Crim. App. 2006); *Rey v. State*, 897 S.W.2d 333, 335-36 (Tex. Crim. App. 1995 ). The issue was properly preserved.

## V. BRADY CLAIM

The Supreme Court in *Brady v. Maryland* held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The purpose of this rule was to avoid an unfair trial of the accused: "A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant." *Id.* at 86-88. The Supreme Court later explained that *Brady* essentially created a federal constitutional right to certain minimal discovery.[10] *United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976).

We have held that to find reversible error under *Brady* and *Bagley*, a defendant must show that

(1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith;

(2) the withheld evidence is favorable to him;

(3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different.

---

[10]However, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).

*Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Additionally, we require that the evidence central to the *Brady* claim be admissible in court. *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993).

Here, the evidence at issue is the audio portion of the videotape (State's Exhibit 1). A review of the videotape reveals that the audio portion began shortly after Appellant was placed in Asby's vehicle, and it continued until Appellant was taken into the police station. Initially, Asby informed Appellant of his *Miranda* rights. Then, the trooper and Appellant discussed a variety of topics including why Appellant was traveling through Oklahoma, why the van was dirty, where he obtained the plant material, what he was going to make out of the material, and how he got the idea to do so. Significantly, Appellant asked Asby how the police would go about testing the plant material. He expressed that he was not worried about the results because he knew that it was not marijuana, and Asby assured him that, if testing indicates that it was not marijuana, Appellant would be released. Appellant also stated that he did not know that it was illegal to possess the relevant plant material, and he would have dumped it if he had known of that fact.

## A. The State failed to disclose evidence

*Brady* held that the State has a constitutional duty to disclose to a defendant material, exculpatory evidence. The scenarios to which *Brady* applies "involve[] the discovery, after trial of information which had been known to the prosecution but

unknown to the defense." *Agurs*, 427 U.S. at 103. Consequently, "*Brady* and its progeny do not require prosecuting authorities to disclose exculpatory information to defendants that the State does not have in its possession and that is not known to exist." *Hafdahl v State*, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990). Similarly, the State does not have such a duty if the defendant was actually aware of the exculpatory evidence or could have accessed it from other sources. *See, e.g., Harm v. State*, 183 S.W.3d 403, 407 (Tex. Crim. App. 2006); *Havard*, 800 S.W.2d at 204-05; *Jackson v. State*, 552 S.W.2d 798, 804 (Tex. Crim. App. 1976).

The State failed to disclose the audio portion when the videotape evidence was initially requested by defense counsel and again failed to disclose it after a second inquiry by the defense that addressed the lack of sound on the copy previously provided. Both prosecutor and defense counsel confirmed that no copy with audio was tendered.

The audio portion of the videotape was (or at least should have been) known to the State. Even if the prosecutor was not personally aware of the audio recording, the State is not relieved of its duty to disclose because "the State" includes, in addition to the prosecutor, other lawyers and employees in his office and members of law enforcement connected to the investigation and prosecution of the case. *Ex parte Reed*, 271 S.W.3d 698, 726 (Tex. Crim. App. 2008). Here, State's Exhibit 1 contained audio. The videotape was created and preserved by law enforcement officers, agents of the State, who then maintained exclusive control over the evidence.

Additionally, the audio evidence was unknown to Appellant since the State consistently represented that the videotape contained no audio. The Waco Court of Appeals relied on *Havard v. State* to hold that *Brady* is not invoked in this case because the evidence at issue is Appellant's own statements. However, the court erred in so holding because this case is distinguishable from *Havard* and its progeny. In *Havard*, the State called a police officer to testify, and in preparation for his cross-examination, the defendant was given an offense report prepared by that officer. *Havard*, 800 S.W.2d at 204. The report included an exculpatory statement made by the defendant to law enforcement officials. *Id.* The defendant argued that a *Brady* violation occurred when the State failed to provide him with his prior statement. *Id.* We disagreed, holding that *Brady* did not apply because the defendant "knew of the fact that he made a statement to police and the content of that statement." *Id.* at 204-05. We explained that he knew of the statement's existence and its content "as a matter of logic" since he was present at the time that he made it. *Id.* at 204. We also emphasized that a defense exhibit presented at trial, the script of a broadcast on a local radio station that included the defendant's statement, gave him notice prior to trial of his statement. *Id.* at 204-05.

Whereas the evidence central to *Havard* was a specific exculpatory statement made by the defendant, the evidence at issue here is the entire audio portion of the videotape. The audio replicates the full exchange between Asby and Appellant that occurred while they traveled to the police station (including, for example, the recitation to

Appellant of his *Miranda* rights and Asby's assurances that the plant material would be tested), as well as other sounds of Appellant's arrest and transport. Law enforcement, unbeknownst to Appellant, recorded the videotape, and the State denied outright that the videotape had audio. So although Appellant might have known of his exculpatory statements, as he maintained all along that he had requested testing of the plant material and continuously denied that it was marijuana, he was unaware that an audio recording existed that captured those very remarks, among others.

Further distinguishing this case from *Havard*, the audio portion of the videotape was the only piece of evidence that substantiated Appellant's defense. Asby testified to much of his interaction with Appellant, including Appellant's claims that the plant material was not marijuana, but significantly, he could not recall whether Appellant requested that it be tested. And, in addition to denying that an audio portion existed, the State took a position contrary to Appellant's defense, arguing that he had not requested testing of the plant material prior to its destruction. Hence, Appellant was unaware of the only audio evidence that was proof that he actually requested testing at the time of his arrest.

This case is also distinguishable from *Hayes v. State*, 85 S.W.3d 809 (Tex. Crim. App. 2002), which relies on *Havard* for the proposition that there is no duty to disclose material of which the defendant already has knowledge. *See Hayes*, 85 S.W.3d at 815 ("In *Harvard v. State*, this Court held that the *Brady* rule did not apply when the appellant

was already aware of the information.").  In *Hayes*, the defendant objected because the State did not disclose favorable punishment evidence or a letter that he had written to his mother-in-law, in which he expressed remorse for what he had done.  *Id.* at 814.  We held that *Brady* was not controlling because the defendant wrote the letter; therefore, he was aware of the existence and contents of the letter.  *Id.* at 815.  In contrast to *Hayes*, Appellant was not "already aware of the information" that there was an audio portion of the videotape, which documented his statements and the surrounding events and directly supported his defense.  Additionally, unlike in *Hayes*, law enforcement, rather than Appellant, created the videotape and then informed Appellant that there was no audio.  This was also emphasized by the State at trial.

Therefore, the court of appeals erred in holding that *Brady* was not applicable in this case.  The duty to disclose existed because the audio recording was known to the State but unknown to Appellant, supported his defense, and the State failed to disclose the audio portion of the videotape.

### B. Evidence withheld is favorable to Appellant

To succeed on a *Brady* claim, Appellant must also show that the evidence withheld by the State was "favorable" to his case.  Favorable evidence is that which, if disclosed and used effectively, "*may* make the difference between conviction and acquittal."  *Bagley*, 473 U.S. at 676.  Favorable evidence includes exculpatory evidence as well as impeachment evidence.  Exculpatory evidence is that which may justify, excuse, or clear

the defendant from alleged guilt, and impeachment evidence is that which disputes, disparages, denies, or contradicts other evidence. *Harm v. State*, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006); *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992).

The audio portion of the videotape is favorable to Appellant because it can be classified as both exculpatory and impeachment evidence. Pursuant to the indictment, the State had to prove that Appellant "intentionally and knowingly" possessed marijuana. *See supra* note 3. As revealed in the audio, Appellant's continual denials demonstrated his apparent belief that the plant material was not an illegal substance, and his immediate insistence on testing further conveyed his faith that such an analysis would exonerate him from any culpability. These beliefs, even if erroneous, could support his defense, thereby exculpating Appellant.

The audio recording may also be employed as impeachment evidence. When testifying, Asby was unable to recall if Appellant requested testing of the plant material. Appellant's insistence on testing, as heard during his transport, could have discounted Asby's testimony and supplemented the record. Additionally, the State emphatically argued that the defense did not even request testing of the plant material until after it knew that the plant material had been destroyed. The audio directly negates that claim because, in fact, Appellant asked Asby to test it at the time of his arrest.

## C. The evidence is material

Under *Brady*, nondisclosure of favorable evidence violates due process only if it is

"material" to guilt or punishment. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109-10. Hence, the defendant must show that, "in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure."[11] *Hampton*, 86 S.W.3d at 612; *see Bagley*, 473 U.S. at 682.

When evaluating whether the materiality standard is satisfied, the strength of the exculpatory evidence is balanced against the evidence supporting conviction. *Hampton*, 86 S.W.3d at 613. The suppressed evidence is considered collectively, rather than item-by-item. *Kyles v. Whitley*, 514 U.S. 419, 436 (1995). And it is important to consider how disclosure could have affected defense preparation, with an awareness of the difficulty of post-trial reconstruction. *Bagley*, 473 U.S. at 683. Thus, "[s]ometimes, what appears to be a relatively inconsequential piece of potentially exculpatory evidence may take on added significance in light of other evidence at trial." *Hampton*, 86 S.W.3d at 613.

Here, the nondiclosure of the videotape's audio portion is material. It undermines the confidence in the outcome of the trial. Had the audio portion been disclosed to Appellant, Appellant asserts that he would have modified his defensive strategies, and the

---

[11]"The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the Government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). This materiality standard is not a sufficiency of evidence test. *Id.* at 434-35.

State would have had to alter its arguments.

As Appellant points out in his brief, the disclosure of the audio portion would have affected the presentation of his defense. Instead of focusing on the destruction of evidence, Appellant would have instead chosen to pursue the defensive theory that he lacked the requisite intent. As mentioned previously, the State had to prove that Appellant "intentionally and knowingly" possessed marijuana. *See supra* note 3. Appellant's continual denials that the plant material was marijuana, combined with the audio recording revealing that he immediately insisted on testing, supports the contention that Appellant neither desired to possess what was indeed marijuana nor was aware that he was doing so. The audio portion communicated Appellant's apparent belief that the testing of the plant material would reveal that it was hemp (i.e., from the part of the plant of which possession is legal) and thereby exonerate him from any culpability. Therefore, the defense could logically argue that Appellant's belief, though erroneous, was reasonable and negated the culpability required. With the presentation of this defense, the jury would have been introduced to an alternate conclusion, and as it would be supported by a real-time audio recording of Appellant's own statements, there is at least a reasonable probability that the jury verdict would have been different.

The significance of the audio portion becomes even more evident when the State's case is considered. Appellant's conviction primarily rested on Asby's testimony that the plant material seized looked and smelled like marijuana, as substantiated by the results of

the analysis and testing performed by the lab in Waco. Based upon that evidence, the State attacked the credibility of Appellant's assertions that the material was not marijuana, arguing that they were deceptive, insincere, and unworthy of belief. In addition, the State asserted that Appellant did not initially request testing or otherwise imply that testing was sought only after knowing that the evidence had been destroyed. With the introduction of the videotape's audio portion, the State would have altered these arguments or abandoned them because the defense could have countered them by showing, via the audio recording, that the demands for testing were actually made at the time of arrest and, thus, Appellant's assertions were accurate and more likely to be accepted by the jury as honest and sincere.

Combining the effects on both parties' trial strategies with the other evidence presented at trial, it is reasonably probable that the outcome of the trial would have been different. This conclusion is buttressed by the fact that at least one juror initially refused to support the conviction, and even in the absence of the undisclosed evidence, there is substantial evidence to support Appellant's mistaken belief. Asby testified that this was the only case of fresh marijuana that he had "made." Asby stated that this was unlike most drug trafficking cases because the plant material was fresh, rather than dried, and Appellant was heading south, instead of north. Appellant apparently made no real effort to hide or disguise the plant material, which covered the cargo area of the van and was visible to Asby when he glanced into the backseat. Appellant immediately explained to

Asby that he was planning to use the material to make trinkets and leather goods. Finally, Appellant's emphatic claims and the unusual facts generated a lengthy discussion among the officers about the material and even prompted Asby to call a chemist. All of this needs to be considered against the fact of the mysterious destruction of the substance and pertinent records before trial.

The test results establishing that the material was marijuana do not negate Appellant's defense because mistake of fact focuses on Appellant's culpability, rather than the actual identity of the plant substance. Still, it is important to consider that Mott testified that hemp rope could possibly, though it would not necessarily, test positive for THC, as marijuana does. When Mott's testimony is combined with the other evidence presented at trial, there is a reasonably probability that the jurors would be left with at least some doubt and uncertainty as to Appellant's guilt.

Overall, the audio portion of the videotape is of material significance to Appellant's case.

## D. Evidence would be admissible

The State does not have a duty to disclose favorable, material evidence if it would be inadmissible in court. *Kimes*, 872 S.W.2d at 703. Hearsay is "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Generally, hearsay statements are not admissible unless the statement falls within a recognized exception to the hearsay

rule. Texas Rule of Evidence 107, known as the rule of optional completeness, is such an exception:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.

Tex. R. Evid. 107. This evidentiary rule "is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing." *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007). Thus, Rule 107 is not invoked by the mere reference to a document, statement, or act. Rather, to be admitted under that rule, "the omitted portion of the statement must be 'on the same subject' and must be 'necessary to make it fully understood.'" *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2004).

In this case, while the audio portion of the videotape may be hearsay, it would be admissible under Rule 107. The State introduced and relied upon the visual portion of the videotape to prove its case. When the videotape was shown to the jury, Asby testified to the exchange that occurred between himself and Appellant during the traffic stop and Appellant's subsequent detention. Asby also referenced Appellant's denials that the plant material was marijuana, but he could not recall whether Appellant requested testing of the plant material. The audio portion of the videotape memorializes the conversation between Appellant and Asby. Hence, the audio is on the same subject as other statements

introduced into evidence. In addition, the audio reflects that Appellant did indeed request testing, making the audio's disclosure necessary to clarify prior uncertainties in Asby's recollection and for the jury to have a full understanding of the case based on Appellant's own words delivered at the time of his arrest. *Cf. Allridge v. State*, 762 S.W.2d 146, 153 (Tex. Crim. App. 1988) (holding that the defendant's self-serving hearsay confession was not admissible under Rule 107 when the State offered a later confession which "did not mislead the jury or leave the jury with only a partial or incomplete version of the facts"). Accordingly, the audio portion of the videotape would be admissible pursuant to Rule 107.

## VI. CONCLUSION

Because the audio portion of the videotape is favorable evidence that would be material to Appellant's case and the State failed to disclose such evidence to Appellant, the State violated Appellant's constitutional right as expressed in *Brady*. We reverse the judgment of the court of appeals and remand the case to the trial court for a new trial.

Hervey, J.

Delivered: September 28, 2011

Publish