**Opinion issued September 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00337-CR

———————————

## RENE VELEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

## On Appeal from the County Criminal Court at Law No. 7
### Harris County, Texas
### Trial Court Case No. 1677907

---

## MEMORANDUM OPINION

Appellant Rene Velez pleaded guilty to a misdemeanor violation of a protective order with a plea agreement of deferred adjudication and community supervision for two years. *See* TEX. PENAL CODE ANN. § 25.07 (West Supp. 2014). The State subsequently moved to revoke the community supervision. After a

hearing, the trial court found true the State's allegation that Velez had violated a condition of his community supervision, revoked it, and sentenced him to confinement in county jail for 300 days. On appeal, Velez contends that the evidence supporting revocation is legally insufficient because the 911 recording, which he contends was inadmissible, is the only evidence supporting revocation. Velez also argues that reversal is required because the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), by failing to notify him that the complainant had recanted. We affirm.

## Background

Velez pleaded guilty to violating a magistrate's order for emergency protection of the complainant, Letisha Talamantes Deleon. In exchange for his guilty plea, the State recommended that the trial court defer adjudication of Velez's guilt and place him on community supervision for two years. The trial court accepted the recommendation, deferred adjudication of Velez's guilt, and placed him on community supervision for two years. As a condition of his community supervision, Velez was ordered to have no contact with Deleon. Within the two years, the State moved to revoke Velez's community supervision on the ground that he had contact with Deleon.[1]

---

[1]  The State originally alleged four grounds for revocation, but abandoned all but this ground at the conclusion of the revocation hearing.

At the revocation hearing, Officer C. Oliver of the Pasadena Police Department testified that on August 27, 2011, he responded to a 911 call from Deleon regarding an assault. When he arrived in the parking lot where Deleon was waiting, he saw a car with a broken window. Deleon was crying and upset, and Oliver observed swelling on the side of her face. Deleon told Oliver that her "ex" had assaulted her and broken her car window. Oliver was asked whether, through his investigation, he came to learn the identity of the assault suspect, and Oliver testified that it was Velez. He also testified that he learned that Deleon was going to recant several days before the hearing.

Deleon testified that on August 27, 2011, she went to dinner and a club. She testified that she did not come into contact with Velez and that the facts alleged in the motion for revocation did not happen.

After Deleon recanted, the trial court admonished her regarding the consequences of perjury and offered to provide her with a court-appointed lawyer, but Deleon declined. The trial court then questioned the prosecution regarding its knowledge of Deleon's recantation. One of the two prosecutors at the hearing told the court that Deleon told him that morning "that she didn't want this to go on anymore, [and] would say [what] we're talking about here today didn't happen," but that he "asked her what actually happened, and she gave me the account that was consistent with the story that she told the police." He told the court that when

3

he spoke with Deleon previously, "[e]verything ha[d] been consistent with the story she told the police."

A second prosecutor told the court that he had contact with Deleon three times before the hearing, and each time she "stated to me that she did not want to deal with this [and] could not miss work. She never recanted to me over the phone that it didn't happen." By contrast, Deleon testified that she told five different prosecutors that she "wanted to drop it, it didn't happen."

The trial court admitted photographs depicting an upset Deleon and her broken car window. Deleon testified that she broke the window herself with a bat. She admitted that she called 911 and that State's Exhibit 11, the recording of the call, was a fair and accurate copy of the call. Velez objected that the admission of the recording was improper impeachment, because the recording was inadmissible hearsay and the State put Deleon on the stand knowing that she would recant. The trial court admitted the recording, in which an upset Deleon states that her "ex," who is subject to a restraining order, came up and punched her.[2] After the recording was played, Velez asked Deleon "So you're telling us basically what you said on the tape was not true?" and she responded, "Yes, he didn't do it."

At the conclusion of the hearing, the trial court directed both sides to produce additional caselaw regarding whether the court should consider the 911

---

[2] Although the trial court later indicated that she might not consider the recording, the ruling admitting the exhibit was unequivocal: "State's Exhibit 11 is admitted."

4

recording. Both sides later declined to present further evidence or arguments. The trial court found true the allegation that Velez violated the no contact requirement of his community supervision, revoked his community supervision, adjudicated him guilty, and sentenced him to 300 days in county jail. Velez appealed.

## Admissibility of 911 Recording and Sufficiency of Evidence to Support Revocation

Velez argues in his first and second issues that the trial court erred in admitting the 911 recording, and because it is the only evidence supporting the revocation, the trial court abused its discretion in revoking his community supervision.

### A.     Standard of Review and Applicable Law

When we review a trial court's decision to revoke a defendant's community supervision, "[o]ur review of the evidence is limited to determining whether the trial court abused its discretion . . . ." *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref d). "To support an order of revocation, the State must prove a violation of a condition of community supervision by a preponderance of the evidence." *Jones v. State*, 176 S.W.3d 47, 50–51 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The State meets its burden of proof "if the greater weight of credible evidence creates a reasonable belief that the defendant violated a condition of his community supervision as alleged by the State." *Id.* at 51. "[A] reviewing court is permitted to consider all evidence in the

5

trial-court record, whether admissible or inadmissible, when making a legal-sufficiency determination." *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

"[T]he trial judge is the sole trier of facts, and determines the credibility of the witnesses and the weight to be given their testimony." *Jones v. State*, 787 S.W.2d 96, 97 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). "The appellate court then reviews the evidence in the light most favorable to the judgment of the trial court." *Galvan v. State*, 846 S.W.2d 161, 162 (Tex. App.—Houston [1st Dist.] 1993, no pet.); *see also Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981) ("[T]his Court must view the evidence in a light most favorable to the verdict . . . .").

## B.    Analysis

Velez argues that there is legally insufficient evidence because the 911 recording is the only evidence supporting revocation and, according to Velez, it was erroneously admitted. Even if we were to assume that admission of the 911 recording was erroneous, we may still consider this evidence when determining whether the evidence is legally sufficient. *See Powell*, 194 S.W.3d at 507 (reviewing court permitted to consider admissible and inadmissible evidence when making a legal-sufficiency determination). Even if we did not consider the 911 recording in our analysis, however, we nevertheless would conclude that evidence

6

other than the 911 recording supports the revocation. Officer Oliver testified that when he responded to the 911 call, he found Deleon crying and upset, and observed swelling on the side of her face. Deleon told him that her "ex," whom Oliver later learned was Velez, had assaulted her and broken her car window. This oral testimony is sufficient to create a reasonable belief that Velez had contact with Deleon. *See Jones*, 787 S.W.2d at 97.

We also must reject Velez's contention that the admission of the 911 recording warrants reversal. The 911 recording is largely duplicative of Oliver's testimony. Accordingly, assuming this complaint was preserved, and that the trial court erred in admitting the 911 recording, the error was harmless. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (improper admission of evidence does not constitute reversible error and is properly deemed harmless if the same or similar facts are proved by other properly admitted evidence); *Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986) (same).

We hold that the trial court did not abuse its discretion in finding that Velez had contact with Deleon and ordering revocation. *See Canseco*, 199 S.W.3d at 439.

We overrule Velez's first and second issues.

## Alleged *Brady* Violation

In his third issue, Velez argues that reversal is required because the State violated *Brady* by failing to notify the defense that Deleon had recanted.

## A.     Standard of Review and Applicable Law

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97 (1963).  To find reversible error under *Brady*, the appellant must show that (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; and (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed the outcome of the trial would have been different.  *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).

When evidence withheld in violation of *Brady* is disclosed at trial, the appellant must demonstrate prejudice arising from the timing of the disclosure. *See Little v. State*, 991 S.W.2d 864, 867 (Tex. Crim. App. 1999).  When disclosure happens during trial,  the appellant's failure to request a continuance waives the error "or at least indicates the delay in receiving the evidence was not truly prejudicial."  *Apolinar v. State*, 106 S.W.3d 407, 421 (Tex. App.—Houston [1st

Dist.] 2003), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005); *see also Jones v. State*, 234 S.W.3d 151, 158 (Tex. App.—San Antonio 2007, no pet.) (holding that defendant must request continuance and present *Brady* complaint in motion for new trial to preserve error on appeal). To preserve a *Brady* complaint for appellate review, the record must show that the appellant objected to the *Brady* violation and obtained a ruling on the objection from the trial court. *See Pena*, 353 S.W.3d at 807.

**B.     Analysis**

Velez contends that the State failed to disclose that Deleon had recanted, which was information favorable to him, and that if he had known that Deleon recanted, it would have changed the outcome of the hearing. The record shows that the trial court questioned the prosecutors about what Deleon had told them with respect to her recantation. Velez did not ask the trial court to rule on his *Brady* claim, object to the trial court's failure to rule, or request a continuance. Accordingly, we hold that Velez waived any *Brady* violation. *See State v. Fury*, 186 S.W.3d 67, 73–74 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (where appellant did not request continuance following complainant's trial testimony regarding previously undisclosed evidence, and did not obtain ruling from trial court regarding alleged *Brady* violation, appellant waived any *Brady* complaint); *see also Pena*, 353 S.W.3d at 807 (to preserve *Brady* complaint, record must show

9

that appellant raised issue with trial court and obtained ruling or objected to trial court's failure to rule).

We overrule Velez's third issue.

## Conclusion

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).