

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00062-CR

TIMOTHY BRITE, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No. 2
Lubbock County, Texas
Trial Court No. 2014-478,819, Honorable Drue Farmer, Presiding

October 19, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant, Timothy Brite, was convicted of assault domestic violence[1] and sentenced 180 days in the Lubbock County Detention Center. Appellant appeals via three issues, contending that (1) the State violated his due process rights by failing to timely apprise appellant of exculpatory evidence in violation of *Brady v. Maryland*,[2] (2) the trial court violated appellant's rights under the confrontation clauses of the United

---

[1] *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2014).

[2] *See Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

States Constitution[3] and the Texas Constitution,[4] and (3) the trial court erred in allowing the admission of hearsay testimony during the trial. Disagreeing with appellant's contentions, we will affirm.

Factual and Procedural Background

On April 1, 2014, Christina Brite, appellant's wife, and appellant got into an argument at their home, in the West Fork Trailer Park, over appellant's drinking. During the argument, Christina left the home to cool down. Upon her return to the trailer home, the argument between Christina and appellant started again. At some point in the argument, Christina was pushed and fell causing her to strike her face against the floor and suffering a bloody nose and scraped face. Christina also suffered bruises to her arms when appellant grabbed at her and attempted to pull her back into the trailer and to her neck when appellant tried to hold her down.

Upon getting free of appellant, Christina again went outside where she saw Mandy Rosales, the assistant manager of the trailer park. Christina asked Rosales to call 911. Rosales called 911 as requested. According to Rosales, she observed Christina with a bloody nose.

Officer Nicolas Anzaldua, of the Lubbock Police Department, was the first officer to arrive at the scene. When he arrived, he observed Christina pinned against a vehicle by appellant. Appellant was yelling at Christina and berating her. Anzaldua separated Christina and appellant. Anzaldua handcuffed appellant and then returned to Christina

---

[3] *See* U.S. CONST. amend VI.

[4] *See* TEX. CONST. art. I, § 10.

and asked what was going on. Christina reported the argument and how she had come to be injured. Anzaldua noted that while speaking to Christina she was crying and shaking. Further, Anzaldua reported that Christina's face was very red and puffy and that she had red marks along her arms and neck with dried blood on her nose and lips. Appellant was arrested and taken from the scene.

During the first day of the trial, Rosales testified about making the 911 call. She further testified that, at some time after the incident, appellant came to the office of the trailer park and apologized, stating he knew he was in the wrong and that he had to make some changes.

Officer Anzaldua then testified about what he observed when he arrived at the trailer park. The focus of his testimony was the statement that Christina made to him when he first visited with her. He stated she was very shook up and was crying and that, during the interview, she advised that appellant had drug her and pushed her causing her to fall and strike her face. Appellant objected to Anzaldua's testimony, stating that it was hearsay. The trial court found that the statements by Christina were excited utterances and therefore admissible as an exception to the hearsay rule.

On the morning of the second day of trial, the State advised the trial court that it had failed to disclose to appellant's trial counsel that Rosales had a criminal history. Rosales was on probation out of Yoakum County, Texas, following a felony conviction for injury to a child. According to the State's information, Rosales was serving an eight-year community supervision sentence for the offense. Further, she had also been convicted for driving while intoxicated while she was on community supervision, and her

3

community supervision had been modified as a result of that conviction. Rosales then testified out of the presence of the jury regarding her community supervision and modification of the community supervision. Rosales also testified that no one from the Lubbock County District Attorney's office or the Yoakum County District Attorney's office talked to her about testifying in exchange for any type of favorable treatment regarding her probation. She denied that being a witness for the State would have any effect on her community supervision. Appellant's trial counsel then requested a continuance in the case so that he could investigate Rosales's criminal history. The trial court granted a two-day continuance.

The following day, the trial court conducted a hearing on the status of trial counsel's investigation into Rosales's criminal history. At that hearing, trial counsel advised he had received a copy of the judgment in the injury-to-a-child case that placed Rosales on an eight-year community supervision. He further advised he had a copy of the order modifying community supervision following Rosales's conviction for misdemeanor driving while intoxicated and a copy of the judgment in the driving-while-intoxicated case.

Trial counsel advised the court that he needed, but had not received, the "chronos" file from Rosales's community supervision and requested an additional continuance to receive and investigate that information.[5] When asked by the trial court why he believed the information in the chronos would be admissible, trial counsel advised that there could be "various extraneous acts" that could "potentially show a

---

[5] Chronos are the chronological notations of the supervising community supervision officer regarding a particular probationer.

bias" such as a need to cooperate with the State to prevent a revocation. In reply, the State again denied having offered Rosales anything or threatened her in any manner for her testimony. Further, the State's attorney advised the trial court that the Lubbock County District Attorney's office had not talked to anyone from Yoakum County regarding Rosales's status on community supervision. Thereafter, the trial court denied trial counsel's request for a one-week continuance.

The trial was scheduled to resume the following day. Prior to resuming testimony, the trial court held a hearing on appellant's *Brady* motion. At that hearing, trial counsel opined, that had he known of Rosales's criminal history, he would have investigated much more thoroughly the facts of the conviction and changed his trial strategy to more heavily impeach the witness. After hearing from the State, the trial court denied the request for an additional continuance.

Trial counsel then called the State's investigator to the witness stand to inquire about when the State found out about Rosales's criminal history. The witness testified that he learned of her criminal history during voir dire of appellant's trial. Trial counsel also called Rosales to the witness stand and elicited testimony regarding her conviction. Rosales testified that she entered a plea of guilty to the charge of injury to a child and that as part of her plea agreement she testified against her co-defendant. Rosales denied having discussed her criminal history or community supervision status with the State prior to her initial testimony in appellant's case. Further, Rosales testified she never believed her testimony for the State would result in an early release from community supervision or that she would receive any favorable treatment in return for her testimony.

5

The jury was returned to the courtroom following the hearing, and the trial commenced again. Rosales was the first witness when the trial resumed. She testified on direct examination by the State about her criminal history. Specifically, she testified about her conviction for injury to a child and the resulting eight-year community supervision. Rosales testified that she had no criminal charges pending in Lubbock or Yoakum County. Finally, she testified that she made no deals with the State in return for her testimony. During cross-examination, trial counsel attempted to question Rosales regarding the underlying facts of her conviction. The State objected and the trial court sustained the objection. During further cross-examination, Rosales testified that the first time she told the State about appellant's apology was in a meeting with the State a few days before trial. She again denied having made any type of deal with the State's attorney in exchange for her testimony.

Christina then testified and denied that appellant had injured her. According to her trial testimony, she tripped going out the door of the trailer and struck her face when she fell. Christina further stated that, when the police officer first arrived, she was standing next to a car and appellant was seated next to her. She acknowledged that she asked Rosales to call 911; however, she said she did so not because she was hurt but to just calm the situation down.

Following the conclusion of the evidence and argument of counsel the jury convicted appellant of assault. Appellant has perfected his appeal and now contends that (1) his due process rights were violated by the State's failure to produce the criminal history of the witness Rosales, (2) his confrontation rights were violated by the trial court's restriction of his cross-examination of Rosales, and (3) the trial court

6

committed reversible error by allowing the hearsay testimony of Officer Anzaldua. Finding no reversible error, we will affirm the judgment entered by the trial court.

*Brady* Issue

Appellant's first issue contends that the failure of the State to provide the criminal history of Rosales prior to her initial testimony violated the requirements of *Brady,* 373 U.S. at 87. Failure to disclose evidence favorable to an accused is a violation of due process, regardless whether the failure to disclose is intentional or inadvertent. *See id.* at 88. To obtain relief for a violation of *Brady*, the appellant must show (1) the State failed to disclose evidence, (2) the evidence withheld was favorable to him, and (3) the evidence was material. *See id.* at 87. Further, the evidence must be admissible in court. *See Pena v. State,* 353 S.W.3d 797, 809 (Tex. Crim. App. 2011).

The evidence at issue in this matter is the criminal history of Rosales. This evidence would be considered impeachment evidence. Such impeachment evidence is considered favorable evidence for the appellant. *United States v. Bagley,* 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). Accordingly, we find that the State did fail to timely furnish the criminal history of Rosales and that the evidence of her criminal history was favorable as impeachment evidence. *See id.*

The issue before the Court is whether this evidence was material. In assessing the materiality requirement, we must determine whether there exists a reasonable probability that, had the evidence been disclosed, the outcome at trial would have been different. *Kyles v. Whitley,* 514 U.S. 419, 433–34, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995); *Ex parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012).

7

Appellant contends that trial counsel's entire strategy would have been different had the criminal history of Rosales been made available earlier. Pursuant to this line of reasoning, appellant urges that earlier disclosure would have given trial counsel an opportunity to fully investigate bias because of Rosales's prior experience of making a deal with the State. The problem with this theory is that the facts belie it. First, the record is clear about the fact that the State made no deal with Rosales in this case. The record demonstrates that the State did not discuss Rosales's community supervision status with the witness and did not discuss her status with the Yoakum County community supervision department. The trial court reviewed the entire file of the prosecutors and found nothing that would qualify as *Brady* material, specifically nothing to indicate that the status of Rosales as a convicted felon on community supervision had ever been discussed. As to appellant's position that his trial counsel's entire strategy would have been different, there is nothing in the record indicating what trial counsel thought he might find except hypothetical reasons for Rosales being biased. At this juncture, it is prudent to note that, at the motion for new trial hearing where trial counsel again set forth this theory, the trial court examined the entire chronological file of Rosales's community supervision and stated that there was nothing contained therein that would have been admissible in the trial of appellant. The chronological file was sealed and forwarded to this Court as part of the appellate record, and we examined the same. Nothing in that file indicated a reason for bias, and nothing in the file would have been admissible in appellant's trial. That is important because, in making our determination about materiality, the purported *Brady* material must be admissible. *See Pena,* 353 S.W.3d at 809.

8

Finally, when we look at the entire trial, we find that trial counsel used Rosales's criminal history to impeach her. Rosales was forced to admit that she had been convicted of a felony and was still on felony probation. Trial counsel questioned her at length about whether she felt a need to testify for the State to avoid any problems with her community supervision. Accordingly, trial counsel was able to make effective use of the late furnished criminal history. Our review of the record leads us to conclude there is no reasonable probability that the outcome would have been different had the information been disclosed in a timely manner. *Kyles,* 514 U.S. at 433–34; *Ex parte Miles*, 359 S.W.3d at 665. Thus, appellant has not met the third prong of the *Brady* analysis. *See Brady,* 373 U.S. at 87. We, therefore, overrule appellant's first issue.

Appellant places significant value in the testimony that Rosales gave regarding her subsequent conversation with appellant where it appeared appellant was apologizing for the incident in question. Under appellant's theory, this added credence to his claim that he had demonstrated proof of the third *Brady* prong, that the evidence in question was material. However, absent from appellant's analysis is the fact that Christina also testified about the apology. She couched her testimony in terms that the apology was for getting the police involved and that he knew the trailer park did not want to see any more activity requiring police involvement. The jury and trial judge heard the testimony regarding the apology from two different witnesses. Therefore, we fail to see how this evidence sheds any light on the question of what further investigation of the communication between Rosales and the State's attorney would have revealed.

## Confrontation Issue

Appellant's second issue contends that the trial court's restriction of trial counsel's cross-examination of Rosales violated appellant's right of confrontation. It is the right of an accused to confront witnesses against him. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. Further, one of the primary rights secured by the right of confrontation is the right to cross-examine those who would offer testimony against an accused. *See Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1998); *Irby v. State*, 327 S.W.3d 138, 145 (Tex. Crim. App. 2010). However, the trial judge does retain wide latitude to impose reasonable limitations on such cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Irby,* 327 S.W.3d at 145 (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)). Such right of cross-examination concerning the witness's potential bias or prejudice does not include "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (quoting *Van Arsdall*, 475 U.S. at 679.) In exercising the proper control, the trial court must ultimately make a determination of whether there is some causal connection or logical relationship between the subject matter that the witness is to be cross-examined about and any vulnerable relationship or potential for bias or prejudice for the witness's testimony at trial. *See id.* at 147.

In this case, the cross-examination at issue involved proposed questions to Rosales about her driving-while-intoxicated conviction and the underlying facts

concerning her continuation on probation.  The trial court did not allow that proposed line of questioning.

Concerning her driving-while-intoxicated conviction, the trial court ruled that this was a misdemeanor conviction that did not involve moral turpitude.  *See* TEX. R. EVID. 609(a)[6] (stating that a criminal conviction may be offered to attack a witness's character must be admitted if the crime was a felony or involved moral turpitude).  The impeachment value of such a conviction is minimal at best, for it sheds no light on any reason Rosales would have a bias in testifying.  *See Irby* at 147.  The record reveals that Rosales's community supervision had been modified in 2007 following her conviction for driving while intoxicated.  There was nothing in the record to indicate that the conviction had anything to do with Rosales's testimony before the trial court.  *See id.* We find that the limitation of appellant's rights to cross-examine Rosales regarding her conviction for driving while intoxicated did not infringe upon his constitutional right of confrontation as guaranteed by the U.S. Constitution and the Texas Constitution.  *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10.

Appellant next complains that the trial court impermissibly limited cross-examination of Rosales about her continued community supervision status.  Trial counsel wished to examine Rosales regarding the fact that her community supervision had been modified following her conviction for driving while intoxicated.  Further, he wished to cross-examine Rosales regarding the fact that, as part of the plea agreement on the injury-to-a-child case, she testified against her co-defendant.  Trial counsel additionally wanted to ask Rosales about her understanding of the relationship between

---

[6] Further reference to the Texas Rules of Evidence will be by reference to "Rule _____."

the State's attorney and the community supervision officer. Finally, appellant contends that the trial court limited his right to cross-examine Rosales about her meeting with the five representatives of the State prior to trial. According to appellant, the trial court impermissibly denied him the right to cross-examine Rosales as to all of these matters.[7]

Initially, we observe that these areas of cross-examination suffer from the same flaw as the previous area concerning Rosales's driving-while-intoxicated conviction. That is, there is no discernible causal connection or logical relationship between these areas of inquiry and possible bias or prejudice on the part of Rosales for the State. *See id.* Rather, this appears to simply be an attempt by trial counsel to cross-examine Rosales in a manner he deems effective in whatever way, and to whatever extent, the trial counsel might wish. *See id.* at 145 (quoting *Van Arsdall*, 475 U.S. at 679.) Our review of the record reveals that trial counsel was asked how the questions he was proposing to ask were admissible and relevant and all trial counsel could say was to show bias or prejudice. Simply uttering the words bias and prejudice neither makes the areas of cross-examination admissible or relevant. The record is devoid of any fact from which one might ascertain how the questions trial counsel proposed to ask might have anything to do with Rosales's testimony. *See id.* at 147. Therefore, the trial court did not err in disallowing trial counsel to cross-examine Rosales in these areas.

We further note that from the record, the trial court actually did allow some of the areas proposed by trial counsel to be asked. Specifically, trial counsel asked about Rosales's community supervision officer in Lubbock and whether Rosales understood

---

[7] During trial counsel's bill of exception, there were several other proposed questions put into the record; however, the ones listed above are the only ones that appellant complains about on appeal.

that the officer had the authority to file an application to revoke her community supervision. Rosales answered affirmatively as to that question. Counsel then was allowed to elicit the response from Rosales that she would have to go to prison if her community supervision was revoked and that she did not want to do that. This was all cross-examination that could show a bias or prejudice and appellant was allowed to question the witness about it. So, too, did the trial court allow trial counsel to cross-examine Rosales about her meeting with the five representatives of the State a week or so before trial. He was further allowed to examine Rosales about the fact that it was at that meeting that she first informed the State about appellant's apology. Thus, the record reflects that there was no total denial of the right of cross-examination, rather a selective denial based upon the fact that the areas to be inquired into would shed no light on the issue of bias or prejudice.[8]  *See id.* at 147.

We hold that the trial court properly limited trial counsel's cross-examination of Rosales. Therefore, there was no denial of appellant's right of confrontation. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. Appellant's second issue is overruled.

Admission of Anzaldua's Testimony

In his final issue, appellant contends the trial court erred in allowing Anzaldua to testify about what Christina told him when he first arrived on the scene of the assault. Appellant contends that such testimony was hearsay and not admissible. We review a trial court's decision to admit evidence over an objection under an abuse of discretion standard of review. *McCarty v. State,* 257 S.W.3d 238, 239 (Tex. Crim. App. 2008).

---

[8] It is noteworthy that during Christina's testimony, she testified about meeting with Rosales and the manager and appellant's issuance of an apology.

The trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.*

The evidence at issue was the testimony of the first police officer on the scene, Anzaldua. He testified that Christina told him that, when she tried to leave the trailer, appellant grabbed her by the arms. As appellant was pushing her into the ground, her head hit the front door and that is when she thought her nose started bleeding. When such testimony was offered, appellant objected that the hearsay statements of Christina were not admissible. The trial court overruled the hearsay objection. It is these rulings about which appellant complains.

Hearsay is an out-of-court statement testified to by someone other than the declarant and introduced to prove the truth of the matter asserted in the statement. *See* Rule 801(d). Hearsay is not admissible in trial unless it falls within one of the recognized exceptions to the hearsay rule. *See* Rule 802. One of the exceptions to the hearsay rule is an excited utterance. *See* Rule 803(2). Rule 803(2) provides that an excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of the excitement that it caused." *Id.*

The record reflects that Anzaldua testified that when he arrived on the scene, he observed appellant and that appellant had Christina pinned against a vehicle. That appellant was yelling at and berating her. Anzaldua further testified that he got out of his car and ordered appellant to step away from Christina. He observed Christina, who appeared to be crying and shaking and noted that Christina had visible injuries. Anzaldua then spoke with Christina, who was crying and shaking so hard that she could

barely speak. It was at this juncture, while speaking with Christina, that she told Anzaldua what had occurred.

From this record, we note that the assault was either still on-going or had just stopped when Anzaldua arrived. Christina was still crying and shaking as she relayed the events to Anzaldua. Thus, she was still dominated by the startling event when she made the statements to Anzaldua. *See Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003). This is the hallmark of an excited utterance. *See id.* Accordingly, Anzaldua's testimony about what Christina told him was admissible as an excited utterance exception to the hearsay rule. Rule 803(2). The trial court did not abuse its discretion in admitting the testimony. *See McCarty,* 257 S.W.3d at 239. Appellant's third issue is overruled.

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.


Mackey K. Hancock
Justice


Do not publish.