COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| LORENZO LOPEZ, | § | No. 08-17-00033-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | |
| | § | County Court at Law No. 7 |
| THE STATE OF TEXAS, | § | |
| | § | of El Paso County, Texas |
| Appellee. | § | |
| | § | (TC#20150C06037) |

## O P I N I O N

Appellant, Lorenzo Lopez, appeals his conviction for theft of property in an amount of fifty dollars or more but less than five hundred dollars.  In a single issue, Lopez contends the trial court abused its discretion in denying his motion for new trial because his confession was obtained during an unconstitutional checkpoint stop.  For the following reasons, we reverse and remand for new trial.

## BACKGROUND

This case involves stolen property discovered at a El Paso Police checkpoint operated in conjunction with Customs and Border Patrol.  On the day of the incident, Sergeant Rogelio Borges of the El Paso Police Department was working an extra-duty employment at a makeshift

checkpoint the EPPD set up at the Bridge of the Americas near the port of entry. The checkpoint was part of a regularly conducted activity of the EPPD to interdict weapons and currency being brought into Mexico from the United States by members of the drug trade. The checkpoint was also used to check whether drivers were carrying their state driver's license and insurance. A sign was setup to indicate it was an insurance checkpoint.

Appellant Lorenzo Lopez was stopped at the checkpoint by Sgt. Borges and asked for his license and insurance. Lopez did not have either. While Borges was speaking with Lopez he noticed two gray City of El Paso trash bins in the back of Lopez's truck. He thought it was unusual that someone would be transporting City of El Paso trash bins into Mexico, and he asked Lopez why he was taking them across the border. Lopez initially told Borges he was using the trash bins for his landscaping business, but upon further questioning admitted he had stolen them from northeast El Paso and planned to sell them in Mexico for twenty dollars apiece. He also admitted he did this regularly. Borges contacted El Paso's Solid Waste Management Department and they sent representatives to the checkpoint to retrieve the trash bins. Borges did not arrest Lopez, choosing instead to cite him and send the paperwork to the District Attorney's office. In total, Lopez was detained for between forty-five minutes to an hour. He was never read *Miranda*[1] warnings.

Lopez was charged by information with theft of property in an amount of fifty dollars or more but less than five hundred dollars. Lopez filed a motion in limine regarding evidence of his confession. Prior to opening statements, Lopez requested the trial court address his motion in limine and contended his confession was made while he was in custody and without the benefit of

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

being read his rights. The State responded that Lopez's statements were made in a noncustodial setting, thus Sgt. Borges was not required to inform him of his rights. The court directed Lopez to "[m]ake the objection as it occurs."

Sgt. Borges was called to testify during the State's case-in-chief and discussed his duties that day and his initial encounter with Lopez. When he began to testify regarding the statements made by Lopez, Lopez objected. The trial court overruled his objection. Lopez asked to approach the bench and argued he had been in custody and had not been read his rights when he made the incriminating statements to Sgt. Borges. The trial court agreed to hear additional argument on the issue outside of the presence of the jury.

Once the jury had been excused, Lopez took Sgt. Borges on voir dire examination. Borges testified the border checkpoint was run by EPPD, not Customs, and that a sign was present indicating it was an insurance checkpoint. He also testified the vehicles were being stopped at random and that not every vehicle was stopped. He acknowledged Lopez was not free to leave during their encounter and he had not read Lopez his *Miranda* warnings. When questioned by the State, Borges testified Lopez was never arrested, only detained. The trial court overruled the objection, stating an officer is not required to read a defendant his rights in detentions of the kind that occurred here. Lopez then injected that he questioned the legality of the stop itself. He pointed out the border checkpoint was not being run by Customs but by EPPD, and that the stops were made at random and without reasonable suspicion. When asked for authority for his position that the stop was illegal, Lopez stated he was unfamiliar with the law on the subject. The court replied it understood Lopez's contention and asked the State and Lopez to research the issue and provide what they found, but informed Lopez the testimony would proceed. Lopez expressed

3

concern about allowing the testimony to be heard by the jury, but the court reiterated the trial would continue. When trial resumed, Sgt. Borges testified that Lopez confessed he had stolen the trash bins with the intent to sell them in Juarez, Mexico.

Before trial reconvened the following day, both sides presented case law to the court on the issue of checkpoints. Lopez argued that under the controlling Supreme Court precedent, checkpoints are only valid if, on balance, the individual's right to personal security is outweighed by the state interest involved in light of three factors: (1) the state interest involved; (2) the level of intrusion on the individual's privacy; and (3) the effectiveness of the procedure used in achieving its stated goal. He contended these factors do not allow for random stops and require some evidence the procedure was effective. Lopez asserted the State failed to present evidence of the checkpoint's efficacy and that Sgt. Borges testified the stops were random; therefore, the stop was unconstitutional. The State countered that driver's license and insurance checkpoints are generally valid, even though DWI checkpoints are not, and that Sgt. Borges testified he was part of an operation attempting to stop the flow of illicit currency, weapons, or stolen vehicles to Mexico and that these are valid national interests. The State further argued Sgt. Borges was following the operation's protocol in that he was conducting driver's license checks and insurance checks and that Lopez was pulled over because he lacked both. The trial court announced it would let the case go forward but stated that if there was a guilty finding the checkpoint issue would need to be considered in a motion to set aside or a motion for new trial.

Following this discussion, the trial resumed. Jose Yamaguchi, the solid-waste-operations manager for El Paso, testified the trash bins in Lopez's vehicle were the property of the City of El Paso, and he valued the bins at fifty-five dollars apiece.

Lopez testified in his own defense. He claimed he was given the trash bins by a homeowner who had hired him to clean out his residence in El Paso. Lopez stated that when he got to the checkpoint and was unable to produce his driver's license and insurance, he was asked to pull over and wait. He testified the trash bins were clearly visible in the back of his pickup, and when he was asked about them he told Sgt. Borges they were given to him by their owner while he was on a landscaping job. He denied telling Borges he had stolen the trash bins or intended to sell them in Juarez.

The jury found Lopez guilty as charged. Lopez filed a motion for new trial, and after hearing argument, the trial court denied the motion and sentenced Lopez to a $40 fine. This appeal followed.

## DISCUSSION

In his sole issue on appeal, Lopez argues the trial court abused its discretion in denying his motion for new trial, contending the evidence against him was obtained from an unlawful checkpoint. Specifically, he contends the three-part balancing test for determining the validity of checkpoints does not allow for random stops. He also argues the State failed to produce any evidence of the checkpoint's effectiveness at achieving its stated purpose—another requirement of the balancing test. The State contends Lopez failed to preserve this issue for review because he failed to make a timely objection to the admission of his statements. The State further contends that even if the error was preserved, Lopez failed to show the checkpoint was illegal.

### *Standard of Review*

To preserve error for review, a complaint must be "made to the trial court by a timely request, objection, or motion that . . . state[s] the grounds for the ruling that the complaining party

5

sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *Pena v. State*, 353 S.W.3d 797, 807 (Tex.Crim.App. 2011)(*quoting* TEX.R.APP.P. 33.1(a)(1)(A)). The trial court must also rule on the request, objection, or motion, either expressly or implicitly, or refuse to do so and the complaining party must have objected to the refusal. *Id*. The legal basis of a complaint raised on appeal cannot vary from that raised in the trial court. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App. 2004)(*citing Euziere v. State*, 648 S.W.2d 700, 703–04 (Tex.Crim.App. 1983)).

We review a trial court's denial of a motion for new trial for abuse of discretion and will reverse only if no reasonable view of the record could support the trial court's ruling. *Burch v. State*, 541 S.W.3d 816, 820 (Tex.Crim.App. 2017)(*citing Freeman v. State*, 340 S.W.3d 717, 732 (Tex.Crim.App. 2011)). This is a deferential standard, and it requires us to view the evidence in the light most favorable to the trial court's ruling. *Id*.

### *Applicable Law*

Stopping a vehicle is a "seizure" for Fourth Amendment purposes. *State v. Sanchez*, 856 S.W.2d 166, 168 (Tex.Crim.App. 1993)(*citing United States v. Martinez–Fuerte*, 428 U.S. 543, 556–58 (1976)). The Fourth Amendment prohibits unreasonable seizures. *Id*. A suspicionless search is considered reasonable under the Fourth Amendment when it meets the balancing test set forth in *Brown*. *Id*., (*citing Brown v. Texas*, 443 U.S. 47, 50–51 (1979)). Under *Brown*, to determine the legality of a suspicionless search we must balance the public interest against the individual's right to personal security in light of three factors: (1) the state interest involved; (2) the level of intrusion on the individual's privacy; and (3) the effectiveness of the procedure used in achieving its stated goal. *Brown*, 443 U.S. at 50–51; *Sanchez*, 856 S.W.2d at 168. *Brown*

6

requires that the seizure be carried out pursuant to a plan "embodying explicit, neutral limitations on the conduct of individual officers." *Id*., at 51. Evidence of effectiveness need not be overwhelming; it is only important that *some* empirical evidence establish the effectiveness of the stop in achieving its stated goals. *Sanchez*, 856 S.W.2d at 170; *see also State v. Van Natta*, 805 S.W.2d 40, 41 (Tex.App.—Fort Worth 1991, pet. ref'd)(holding the State failed to meet its burden to show a roadblock was constitutional where it failed to present any evidence of the effectiveness of the technique in meeting its stated purpose, even though it proved there was a compelling public interest and that the level of intrusion was minimal). Officers are not required to ignore violations of the law unrelated to the purpose of the checkpoint and may act on information they learn during a checkpoint stop. *Lujan v. State*, 331 S.W.3d 768, 773 (Tex.Crim.App. 2011).

*Analysis*

At the outset, we must address whether this issue was preserved for our review. The State contends Lopez's objection was untimely because he raised it for the first time in a hearing outside the presence of the jury and admitted he was unfamiliar with the law on the subject of checkpoints; thus, he was unable to make a valid objection and obtain a required ruling before the jury heard the testimony.

At trial, Lopez objected before Sgt. Borges's was able to testify regarding the incriminating statements Lopez made, and the trial court overruled the objection. Lopez requested a hearing outside the presence of the jury and there argued his point on custody and *Miranda* warnings, which the trial court overruled. Lopez then objected on the grounds he raises now: the border checkpoint was not being run by Customs but by EPPD, and that the stops were made at random and without reasonable suspicion. Although when pressed for authority by the trial court he

7

admitted he was unfamiliar with the area of law, the trial court stated it understood Lopez's contention and asked the State and Lopez to research the issue and provide what they found. The court then ruled the testimony would proceed. All that was required here to preserve error for review was a timely objection, made to the trial court, that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, and a ruling on the objection. *Pena*, 353 S.W.3d at 807. Lopez objected on the grounds he now complains of on appeal, and though he could not cite specific authority at the time, he made his objection with sufficient specificity that the trial court understood the grounds for his complaint, as demonstrated by the trial court's statement that it understood his complaint, and he received a ruling on his objection. Accordingly, the issue was properly preserved for our review.

Regarding the legality of the stop itself, Lopez argues the checkpoint was unable to pass the balancing test in *Brown* because the State presented no evidence of the plan's efforts to limit the conduct of individual officers through explicit, neutral limitations on conduct. He also contends the State failed to present any evidence of the checkpoint's effectiveness in achieving its stated goal of finding weapons and currency going into Mexico.

A similar situation was addressed in *Van Natta*, which was cited approvingly by the Court of Criminal Appeals in *Sanchez*.[2] In *Van Natta*, police setup a nighttime roadblock according to a written plan approved by ranking officers of the department. *Van Natta*, 805 S.W.2d at 41. All southbound traffic between the hours of 11:00 p.m. and 12:30 a.m. would be funneled into a single lane by means of traffic cones and flares. *Id*. The plan contemplated that all vehicles would be stopped, and the officers were instructed to greet each driver by stating: "Good evening. We're

---

[2] *See Sanchez*, 856 S.W.2d at 170.

8

conducting a DWI checkpoint, field sobriety evaluation. Thank you for your courtesy." *Id*. The roadblock was designed to take less than a minute if officers did not notice signs of intoxication; if the driver did exhibit signs of intoxication, he or she would be required to perform a field sobriety test. *Id*. The appellant, when driving through the checkpoint, exhibited symptoms of intoxication and was ordered to perform a field sobriety test, which he failed. *Id*. At his subsequent trial for DWI, the State introduced statistical evidence from the Texas Department of Public Safety of the traffic injuries and deaths caused by drunken drivers in the area and in the state in general. *Id*. Despite some indication that other DWI arrests may have been made at the checkpoint that night, the evidence only reflected that the appellant was arrested out of the total 177 vehicles stopped. *Id*. The State offered no statistical or opinion evidence as to the effectiveness of DWI roadblocks in enforcing the DWI laws. *Id*.

In holding the State had failed to satisfy the *Brown* test, the court acknowledged the State had fully discharged its burden to satisfy the first and second prongs of *Brown* by offering statistical evidence showing a compelling state interest in stopping the injuries and death caused by drunken drivers and by introducing the written plan created by the ranking officers which showed it was designed to be brief and only minimally intrusive on the drivers. *Van Natta*, 805 S.W.2d at 42. But the court held the State had completely failed to establish the effectiveness prong of the *Brown* test by failing to introduce statistical or opinion evidence that the roadblock seizure they employed "had any effect whatsoever in advancing the State's interest." *Id*. Therefore, the suspicionless seizure of the appellant violated his Fourth Amendment rights and the evidence gathered thereby had to be suppressed. *Id*., at 43. The court also rejected the State's alternative contention that even without the roadblock seizure the officers had reasonable grounds

9

to stop the appellant because he had been driving erratically, stating it was "totally irrelevant" because the seizure was a result of the roadblock and not the officer's observations. *Id.*

Here, Sgt. Borges testified he was working at a checkpoint setup by the police near the Bridge of the Americas, which was a regularly conducted activity of the EPPD. He testified that "our objective there is to check for weapons or currency going into Mexico." Borges elaborated that there is a significant quantity of currency and weapons that are brought into Mexico from the United States as part of the drug trade. He stated they also checked if drivers had their insurance and driver's licenses. When asked if they checked for "any other contraband," he stated stolen vehicles are frequently brought into Mexico from the United States and elaborated that "on several occasions there'[ve] been stolen vehicles that are stopped at the Bridge as well." Borges went on testify that Lopez, when asked, could not produce a license or insurance. It was then he noticed the City of El Paso trash bins in the back of Lopez's vehicle. On voir dire, Borges testified he and his fellow officers were not stopping every vehicle coming through the checkpoint but were actually stopping them at random. Other than Borges's testimony, no evidence was presented on the checkpoint's purpose, plan, or efficacy.

To determine whether a suspicionless search is valid, we must balance the public interest against the individual's right to personal security in light of three factors: (1) the state interest involved; (2) the level of intrusion on the individual's privacy; and (3) the effectiveness of the procedure used in achieving its stated goal. *Brown*, 443 U.S. at 50–51; *Sanchez*, 856 S.W.2d at 168. From the record before us, the State produced neither statistical or opinion evidence that the checkpoint was effective at achieving its stated goal, nor any evidence regarding the procedures used to limit the officers' discretion. Sgt. Borges did not testify the plan was tailored to limit the

unfettered discretion of officers; in fact, his testimony was that the stops were random and up to the complete discretion of the officers. While the State argues in its brief that Borges's actions were part of a detailed plan known as "Operation Stonegarden," which it alleges is a joint operation between Customs and local law enforcement, it offered no evidence at trial of this fact or what the parameters of the operation were or how the plan limited officer discretion. It thus failed to satisfy the second prong of *Brown*. *See Brown*, 443 U.S. at 50–51. As to the third prong, the only evidence provided on the effectiveness of the checkpoint in achieving its stated goal was Borges's testimony that stolen vehicles had been recovered on "several occasions." While he stated stolen vehicles were checked for, he stated the purpose of the operation was to interdict guns and currency going into Mexico and to check for insurance and driver's licenses. No evidence was presented that the checkpoint was effective at achieving its stated goal of interdicting guns and currency or ensuring drivers possessed their licenses and insurance other than the fact that Lopez himself was stopped and lacked a driver's license or insurance. As the court in *Van Natta* held, evidence that the checkpoint was effective against the defendant himself is insufficient, standing alone, to demonstrate the checkpoint is effective in achieving its stated goal. *Van Natta*, 805 S.W.2d at 41. In the absence of evidence of "authoritatively standardized procedures followed" in operating the checkpoint in order to serve its stated purpose and minimize officer discretion, and in the absence of evidence or testimony demonstrating the effectiveness of the checkpoint in achieving its stated goal, no reasonable view of the record could support a conclusion by the trial court that the checkpoint was reasonable under the Fourth Amendment. *Sanchez*, 856 S.W.2d at 170.

The State further argues in its brief that even if the evidence was insufficient to show the checkpoint was constitutionally valid under *Brown*, it should not matter because the trash bins in

11

the back of Lopez's vehicle were in plain view and thus Sgt. Borges's was acting legally when he investigated the ownership of the bins. This is the same argument rejected in *Van Natta*. *Van Natta*, 805 S.W.2d at 43. The checkpoint was the cause of the seizure. While Texas courts have recognized that a driver's actions may give officers reasonable suspicion or probable cause independent of an illegal roadblock, the reasonable suspicion or probable cause must arise *prior* to and independent of the roadblock. *State v. Skiles*, 938 S.W.2d 447, 454 (Tex.Crim.App. 1997)(*citing Murphy v. State*, 864 S.W.2d 70 (Tex.App.—Tyler 1992, pet. ref'd)). Here, Sgt. Borges testified it was only after stopping Lopez and discovering Lopez did not have a driver's license or insurance that he noticed and began inquiring about the City of El Paso trash bins. Thus, independent probable cause did not arise prior to Lopez's seizure at the checkpoint. Accordingly, we conclude the trial court abused its discretion in denying Lopez's motion for new trial. Issue One is sustained.

## CONCLUSION

Having sustained Appellant's sole issue, the trial court's judgment is reversed, and we remand the case to that court for a new trial.

May 29, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

12